Phillip DeFelice (#6020)
LAW OFFICE OF PHILLIP DEFELICE
220 3rd Avenue Suite 405
P.O. Box 941
Havre, MT 59501-0941
Telephone: (406) 265-5294
E-mail: *phillipdefelice@yahoo.com*

Michael J. Ferrigno, *pro hac vice*
LAW OFFICE OF
MICHAEL J FERRIGNO, PLLC
3152 S. Brown Way, Suite 3
Boise, Idaho 83706
Phone: 208-391-3969
*michael.ferrigno@ferrigno-law.com*

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re YELLOWSTONE MOUNTAIN CLUB, LLC, | Case No. 08-61570-11-RBK<br><br>Adversary Proceeding: 09-00064 |
| BRIAN A. GLASSER, SUCCESSOR TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDAITNG TRUST,<br><br>Plaintiff,<br>vs.<br><br>TIMOTHY L. BLIXSETH, CASA 20 LLC, TAMARINDO, LLC<br><br>Defendants. | No. 2:13-cv-00068<br><br>**DEFENDANTS' PETITION FOR THE IMMEDIATE RELEASE OF TIMOTHY L. BLIXSETH FROM CUSTODY** |

Defendant Timothy L. Blixseth, by and through counsel, hereby files his petition for the immediate release of Timothy L. Blixseth from incarceration.

## RELEVANT PROCEDURAL BACKGROUND

On April 20, 2015, this Court ordered Mr. Blixseth to be immediately be "taken into custody by the U.S. Marshals to be incarcerated until such time as he provides and files with the Court and serves upon all parties, an accounting that complies full with" paragraph 5 of the Court's Memorandum and Order of February 3, 2014, the Court's January 9, 2015 order and its January 23, 2015 order. *See* Doc. 159 at p. 26. Moreover, the Court ordered that Blixseth "personally and in compliance with 28 U.S.C. § 1746 . . . positively verifying that each and all of the deficiencies and omission received in the General and Specific Deficiency sections of this Order have been addressed and fully answered and explained." *Id.* at p. 27. Based upon the Declaration of Timothy Blixseth that is being filed concurrently with this Petition, Mr. Blixseth requests his immediate release from the custody of the U.S. Marshals forthwith.

## COMPLIANCE WITH COURT'S APRIL 20, 2015 ORDER

<u>General Deficiencies</u>

1.  The declaration of Timothy Blixseth contains a detailed forensic accounting prepared by Certified Public Accountants that contains annotations and pinpoint citations to the record. *See* Blixseth Decl., Ex. 1.

2

2.  In his Declaration, and as required by this Court as a condition of his release from custody, Mr. Blixseth swears to his statements in compliance with 28 U.S.C. § 1746 after reviewing the accounting attached to his Declaration that was provided to him by his counsel at the Cascade County Adult Detention Center. Blixseth Decl. at ¶ 6.

3.  Mr. Blixseth's declaration provides that all of the documents that he knows are available that are in his possession, custody and control have been provided and cited to. Blixseth Decl. at ¶ 7. However, Mr. Blixseth is not the manager of Western Pacific Timber, LLC ("WPT") and has no ability to produce documents held by WPT. Blixseth Decl. at ¶ 8.

4.  Mr. Beau Blixseth provided Mr. Blixseth with a declaration regarding his receipt of payment for services rendered to Desert Ranch Management, LLC. His Declaration is being filed concurrently with this Petition and sets forth the reason and amount of funds received. *See* Beau Blixseth Declaration filed concurrently herewith.

5.  The CPA Firm's accounting shows how the $1,178,000 was spent. Blixseth Decl. Ex. 1 at Section 20, pp. 1-37.

6.  Mr. Blixseth's declaration also explains that the $41,666.66 was a management fee for being the manager of Western Pacific Timber, LLC and was *not* money from the sale of the Tamarindo Hotel and Resort. Blixseth Decl. at ¶ 8.

However, the accounting identifies when those management fees were deposited. Blixseth Decl. Ex. 1 at Section 23, pp. 1-9.

Specific Deficiencies

1A. Blixseth's declaration, which under penalty of perjury, attaches and incorporates an updated and revised accounting prepared by the CPA firm that identifies the receipt of each payment from the purchaser, when and where the deposits were made, and cites to each of the supporting documents available. Blixseth Decl. Ex. 1, Section 11 at pp. 2, 20, Section 12 at pp. 2, 13, Section 14 at pp. 2, 8. The attached declaration attests to where the funds were transferred initially or thereafter. *See generally* Blixseth Decl. Ex. 1 Account Summary at p. 1.

1B. The accounting attached to Mr. Blixseth's declaration shows the total amount of closing costs associates with closing of Tamarindo. *Id.* at Section 21. The accounting identifies $1,146,133.62 USD in closing costs. *Id.; see also* Doc. 49-2, pp. 50-55, Doc. 137-6, p. 31, Doc. 148-1, p. 5- 15 (bank statement totaling $13,499,505.57 pesos for maintenance and credits); Blixseth Decl. Ex. 1 at Section 24, ER 5433-5436 (Ledger showing the date and amount of each payment for electricity bills, telephone bills, green fees, and maintenance quotes). Documents supporting maintenance for Casa 17 and the Tamarindo Hotel were previously filed with the Court. *See* Doc. 137-4, pp. 4-14, Doc. 148-1, p. 5- 15 (all other

4

backup documents regarding greens fees, commissions for greens fees, telephone, and electricity were not located).

1C. The accounting attached to Mr. Blixseth's declaration shows each intercompany and banking institution transfer of the proceeds of the Tamarindo Resort and the accounting provides annotation and pinpoint citations to the record. *See generally* Account Summary at p. 1, and Sections 1 through 23.

1D.  The accounting attached to Mr. Blixseth's declaration shows each payment of taxes and labor debts for which the Tamarindo Resorts purchaser withheld for each holdback and each payment of taxes and labor debts contains annotation and pinpoint citations to the record.[1]

1E.   The accounting attached to Mr. Blixseth's declaration shows each payment or other distribution of the proceeds of the Tamarindo Resorts sale to third parties and each transfer contains annotation and pinpoint citations to the record.  *See generally* Blixseth Decl. Ex. 1.

---

[1] *See generally* Blixseth Decl. Ex. 1, at Section 11 (page 13 totals of labor, vendor/operating expenses, and taxes); Section 12 (page 2 totals of labor, vendor/operating expenses, and taxes); Section 13 (page 2 totals of labor, vendor/operating expenses, and taxes); Section 14 (page 2 totals of labor, vendor/operating expenses, and taxes); Section 15 (page 2 totals of labor, vendor/operating expenses, and taxes); Section 16 (page 2 totals of labor, vendor/operating expenses, and taxes); Section 17 (page 2 totals of labor, vendor/operating expenses, and taxes); and Section 19 (page 7 totals of labor, vendor/operating expenses, and taxes);

2. The accounting attached to Mr. Blixseth's declaration shows, to the best of Mr. Blixseth knowledge and ability, how each company that received proceeds from the sale of Tamarindo spent those funds with annotations to general ledgers, bank statements and other source documents that were previously filed with the Court (but refiled and number using ER references). *See generally* Blixseth Decl. Ex. 1, Section 24, Excerpt of Record.[2]

3. The accounting attached to Mr. Blixseth's declaration shows the receipt of each payment from the purchaser to Tamarindo Resorts, Casa 18, and Hospitality Services, when and where the deposits were made, and cites to each supporting documents available. *See generally* Blixseth Decl. Ex. 1, Sections 11 through 19.

4. The accounting attached to Mr. Blixseth's declaration shows the receipt of funds to Jessica Blixseth and Beau Blixseth. Blixseth Decl. Ex. 1, Section 7 at pp. 3, Section 8 at pp. 3, Section 20. However, as stated above, Mr.

---

[2] Blixseth previously provided the following general ledgers: Kawish, LLC (Docs. 113-8, 113-9, 113-10, 113-11); Western Air & Water, LLC (Docs. 113-12, 113-13, 131-1 through 131-4); Desert Ranch, LLC (Docs. 113-14 through 113-16, 131-6 through 132-4); Blixseth Group of Washington, LLC (Docs 113-17, 132-5 through Doc. 133-15); BSM, LLC (Docs. 133-16 through 134-3);Cody Ranch, LLC (Docs. 134-4 through 134-11); Friday Records, LLC (Docs. 134-12 through 134-17); Little Bear, LLC (Docs. 134-18 through 134-26); NCRS, LLC (Docs. 134-27 through 134-32); and Overlook Partners, LLC (Docs. 134-33 through 134-38). However, in an effort to assist the Court in pinpoint citations, Blixseth is refiling these documents using ER references.

Beau Blixseth's declaration explains the reason and amount of funds received by him. *See* Beau Blixseth Decl. that is being filed concurrently with this petition. Mr. Blixseth's declaration and accounting provides how the $1,178,000 was spent. Blixseth Decl. Ex. 1, Section 20 at pp. 1-37.

5. The accounting attached to Mr. Blixseth declaration shows the receipt of each transfer from the purchase of the sale of Tamarindo and to the best of Mr. Blixseth's knowledge, how proceeds from the sale were spent. *See generally* Blixseth Decl. Ex. 1.

6. Mr. Blixseth previous filing provided the general ledgers of the various corporations owned by Mr. Blixseth.[3] The accounting attached to the Blixseth's declaration identifies how the proceeds from the sale of Tamarindo passed through each of the various companies. However, as indicated in Mr. Blixseth's declaration, we no longer is the Manager of Western Pacific Timber, LLC and has no ability to produce documents held by WPT. Blixseth Decl. at ¶ 8.

---

[3] Kawish, LLC (Docs. 113-8, 113-9, 113-10, 113-11); Western Air & Water, LLC (Docs. 113-12, 113-13, 131-1 through 131-4); Desert Ranch, LLC (Docs. 113-14 through 113-16, 131-6 through 132-4); Blixseth Group of Washington, LLC (Docs 113-17, 132-5 through Doc. 133-15); BSM, LLC (Docs. 133-16 through 134-3); Cody Ranch, LLC (Docs. 134-4 through 134-11); Friday Records, LLC (Docs. 134-12 through 134-17); Little Bear, LLC (Docs. 134-18 through 134-26); NCRS, LLC (Docs. 134-27 through 134-32); and Overlook Partners, LLC (Docs. 134-33 through 134-38.

7. The accounting attached to Mr. Blixseth's declaration provides pinpoint citations to each transaction within the various companies that received and spent proceeds from the sale of the Tamarindo Hotel and Resort; thus, the Court can follow the proceeds from the sale and link the use of the proceeds to the various bank statements. *See generally* Blixseth Decl. Ex. 1.

10. English language translations of all produced documents originally written in the Spanish Language, certified by the translator under 28 US.C. § 1746, of all currency conversions for translation which used Pesos as the medium of exchange on the date of the transaction, and which were certified by the accountant under 28 U.S.C. § 1746. English translations were filed by a team of translators. Doc. 130, p. 3 at ¶ 7, Docs. 148 through 150-5. However, the previous Court orders did not order those translations to be cross-referenced to the corresponding Spanish language documents. That being said, the accounting attached to Mr. Blixseth's declaration provides the court the detailed account of how the proceeds passed through each entity in Mexico and America; thus, the accounting provides sufficient structure to navigate the vast numbers of pages produced. *See generally* Blixseth Decl. Ex. 1.

## ARGUMENT

"Civil contempt sanctions, however, are only appropriate where the contemnor is able to purge the contempt by his own affirmative act and 'carries the

keys of his prison in his own pocket.' *U.S. v. Ayers*, 166 F.3d 991, 997 (9th Cir. 1999)(citing *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828). "A contemnor's ability to purge civil contempt, therefore, cannot be contingent upon the acquiescence of an opposing party because such an arrangement effectively renders the contempt punitive, rather than civil." *Id.* (citations omitted). Thus, Blixseth's filing of the revised and updated accounting by a CPA firm is sufficient and does not require the YCLT acquiescence. Even though Mr. Blixseth had no ability to personally comply with the April 20, 2015 Order, and had to rely on his family and attorneys and a CPA firm to comply, the updated and revised accounting represents all that Mr. Blixseth can do to comply with the Orders of this Court and he has, to the best of his ability, complied with the various orders of this court.

Even if a civil contempt order originally imposed to "coerce" compliance with a court order can lose its "civil" character and become punitive if continued incarceration is no longer coercive. In a similar situation in bankruptcy proceedings, the Supreme Court has stated:

> It is everywhere admitted that even if (petitioner) is committed, he will not be held in jail forever if he does not comply. His denial of possession is given credit after demonstration that a period in prison does not produce the goods. The fact that he has been under the shadow of prison gates may be enough, coupled with his denial and (evidence of present conditions or intervening events), to convince the court that his is not a wilful disobedience which will yield to coercion.

*Maggio v. Zeitz*, 333 U.S. 56, 76, 68 S. Ct. 401, 406, 92 L. Ed. 476 (1948). Continuing commitment for civil contempt under such circumstances violates due process and raises a serious federal constitutional challenge which requires further proceedings in the district court. *Lambert v. Montana*, 545 F.2d 87, 89 (9th Cir. 1976). "Where it is alleged that the duration of an individual's confinement no longer bears a reasonable relationship to the purpose for which he is committed a substantial federal constitutional claim relating to denial of due process is present." *Id.* Any allegedly "coercive" purpose of incarcerating Mr. Blixseth has now ceased upon the filing of his Declaration and the accounting attached thereto and he must therefore be released from custody forthwith. Each day of further incarceration becomes punitive and therefore criminal, requiring compliance Fed.R.Crim.P. 42(b) and an immediate bail hearing.

Given the production of the revised and updated accounting, Blixseth has fully complied with the Court's order pertaining to the accounting of the sale of Tamarindo. Therefore, Blixseth has purged himself of contempt. Blixseth requests the Court immediately direct that U.S. Marshals release Mr. Blixseth from custody forthwith.

Date: June 4, 2015          Respectfully submitted

                                               */s/ Phillip DeFelice*
                                               Phillip DeFelice (#6020)
                                               LAW OFFICE OF
                                               PHILLIP DEFELICE

220 3rd Avenue Suite 405
P.O. Box 941
Havre, MT 59501-0941
Telephone: (406) 265-5294
E-mail: *phillipdefelice@yahoo.com*

**CERTIFICATE OF SERVICE**

 I, Phillip DeFelice, hereby certify under penalty of perjury that on the 4th day of June, 2015, copies of the above document were served electronically by ECF notice to all persons/entities requesting special notice or otherwise entitled to same and that in addition, I hereby certify that I have mailed or served the document to the following non-ECF participants in the manner indicated by the non-participant's name:

 No manual recipients.

        */s/ Phillip DeFelice*
        Phillip DeFelice

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2) of the Federal Rules of Civil Procedure, I certify that this brief, excluding the caption, certificate of service, and certificate of compliance, complies with the word limit of not more than 6500 words, containing 1,842 words according to word count calculated by Microsoft Word 2010 for Windows

*/s/ Phillip DeFelice*
Phillip DeFelice