# FILED

FEB 1 9 2016

Clerk, U.S. District Court
District Of Montana
Helena

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**BUTTE DIVISION**

| | |
|---|---|
| In re | Case No. 08-61570-11 |
| YELLOWSTONE MOUNTAIN CLUB, LLC, | Adversary No. 09-00064 |
| Debtor | |
| BRIAN A. GLASSER, SUCCESSOR TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDATING TRUST, | No. CV 13-68-BU-SEH |
| Plaintiff, | **OPINION AND ORDER** |
| vs | |
| TIMOTHY L. BLIXSETH, CASA 20 LLC, TAMARINDO LLC, JOHN DOES 1-100, and XYZ CORP. 1-100, | |
| Defendants. | |

## INTRODUCTION

This matter is before the Court for address and resolution of three questions presented by the Ninth Circuit Court of Appeals in its January 11, 2016, Order.[1]

## BACKGROUND

The issues presented for resolution are in culmination of ongoing contempt proceedings in this Court and in the Ninth Circuit Court of Appeals involving one Timothy L. Blixseth ("Blixseth") dating back to December 6, 2013.

On October 23, 2013,[2] this Court was advised that Blixseth, in direct contravention of the order of Judge Ralph B. Kirscher, United States Bankruptcy Judge for the District of Montana in Adversary Proceeding Number 09-00064 (Doc. 9), had sold a resort property owned by him in Mexico known as the Tamarindo Resort ("Tamarindo") and had dissipated the sale proceeds totaling some $13,820,139.84[3]. Proceedings to determine whether Blixseth should be held in contempt of court for his actions in selling the resort were commenced in this Court on December 6, 2013.[4]

---

[1] *See* Doc. 405.

[2] *See* Doc. 37.

[3] *See* Doc. 178-1 at 2.

[4] *See* Doc. 54.

The various contempt-related proceedings occurring in this Court and involving Blixseth and the sale of Tamarindo since December 6, 2013, have included: (1) three accountings filed by Blixseth in this Court together with multiple supplements and submissions; (2) submission by Blixseth of over twenty-two thousand pages of what were claimed to be Tamarindo business and sale records; (3) a summary accounting compilation from an Idaho-based accounting firm hired by Blixseth;[5] (4) nine separate hearings and status conferences before the Court;[6] and (5) six separate appeals filed by Blixseth in the Ninth Circuit Court of Appeals,[7] the most recent of which was dismissed by the Circuit for lack of jurisdiction on February 9, 2016.[8]

A number of statements by the Circuit in rulings issued in the several appeals are noteworthy:

1. We therefore conclude that the contempt order was civil in nature. We have reviewed Blixseth's remaining arguments and hold that they are without merit.[9]

---

[5] *See* Docs. 67, 68, 70, 90, 97, 98, 113, 130, 131, 132, 133, 134, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 157, 178, 179, 180, 181, 182, 183 and 184.

[6] *See* Docs. 58, 99, 108, 119, 158, 194, 324, 343 and 414.

[7] *See* Docs. 74, 109, 167, 200, 396, and 40

[8] *See* Doc. 424 .

[9] Doc. 80 at 5-6.

2.        Petitioner has not demonstrated that his remaining contentions warrant the intervention of this court by means of the extraordinary remedy of mandamus. . . .

No further filings will be entertained in this closed case.[10]

3.        Appellant's renewed emergency motion to stay the district court's April 20, 2015 order pending review of the petition for writ of mandamus is denied.[11]

4.        Petitioner has not demonstrated that this case warrants the intervention of this court by means of the extraordinary remedy of mandamus. . . .

Petitioner's request for reassignment to a different district judge is also denied.[12]

5.        Petitioner may secure his release by providing an accounting that clearly shows the disposition of the proceeds of the sale of the Tamarindo Resort.[13]

6.        Because the district court's contempt order becomes criminal, and subject to appellate review, if Blixseth lacks the ability to comply with the order . . . the district court must make "an individualized decision that the continued confinement of [the appellant] would have a coercive effect," and a finding that 'appellant is able to comply with its orders of production.'[14]

7.        [W]e dismiss this appeal for lack of jurisdiction."[15]

---

[10] Doc. 165 at 2.
[11] Doc. 174.
[12] Doc. 188 at 1.
[13] Doc. 283 at 1.
[14] Doc. 405 at 2 (citation omitted).
[15] Doc. 424 at 2.

An evidentiary hearing directed to the question of whether Blixseth had purged himself of contempt as required by prior orders of this Court issued on January 9, 2015, April 20, 2015,[16] was held on October 19, 2015.[17] Proposed findings of fact and conclusions of law were submitted by the parties in advance of the hearing.[18] On December 30, 2015, the Court issued and filed findings of fact and conclusions of law, an order, and a decision in the matter ("Doc. 399").[19]

A very substantial part of the findings of fact and discussion in Doc. 399 were: (1) directed to identification of the form and substance of statements, data and explanations that Blixseth was required to furnish "which were necessary to appropriately account for the expenditure and disposition of the proceeds received from the sale of Tamarindo;"[20] and (2) provided an analysis and explanation by the Court as to why and how Blixseth had failed or refused to comply with the Court's orders as required. The Court also pointed out that "[n]otwithstanding that Blixseth directed and controlled every aspect of the sale of Tamarindo and of distribution of the proceeds, he has provided nothing of significance to assist in the task of producing the required accounting."[21]

---

[16] *See* Docs. 112 and 159.
[17] *See* Doc. 343.
[18] *See* Docs. 331 and 332.
[19] *See* Doc. 399.
[20] Doc. 399 at 16.
[21] Doc. 399 at 18.

Specific deficiencies and inadequacies in the materials and evidence produced by Blixseth were pointed out in the findings.[22] Critical gaps in the material and in the evidence as presented were identified.[23] Deficiencies apparent from the production of documents written in the Spanish language as a part of the accounting without benefit of accurate translation into English were addressed.[24]

In assessing the issues presented to the Court by the several claimed accountings, a number of matters of significance cannot be overlooked or ignored: (1) that Blixseth carried the burden of proving a proper accounting; (2) that he owned and controlled the Tamarindo Resort; (3) that he conducted and carried out the sale of the resort contrary to and in direct defiance of court order; (4) that he personally controlled and directed every aspect of the sale and dissipation of the sale proceeds; (5) that he knew to whom the sale proceed distributions were to be made and were made; and (6) that he had, and still has, the ability and capacity to obtain from those persons and entities who had a part in the several distributions or received funds from the sale, the records and materials that would provide missing or incomplete information necessary to furnish an accounting that "clearly shows" disposition of the resort sale proceeds. The existing record is essentially

---

[22] *See* Doc. 399 at 18.
[23] *See* Doc. 399 at 22.
[24] *See* Doc. 399 at 29 and 30.

void of effort by Blixseth to have made any meaningful attempt to obtain and produce the missing materials either voluntarily or through available and customary discovery procedures in this Court.

Except for depositions of four of his former employees,[25] Blixseth took no steps of significance to gather and present to the Court records necessary to the accounting. The resort sale proceeds were divided and distributed into three separate accounts shortly after the sale.[26] Nineteen individual distributions were claimed to have been made from the three separate accounts.[27] More than three hundred and ninety persons or entities were claimed to have received portions of the proceeds.[28] Absolutely no information of meaningful value was provided by Blixseth or his accountants as to the reason or reasons many of these distributions and payments were made, what the claimed bases for such payments were, how the payments related to Tamarindo, if at all, and significantly, what happened to the money after the last identified distribution or transfer was made. Literally hundreds of thousands of dollars in disbursements made to various Blixseth family members or to entities he owned or controlled have simply vanished without adequate or even plausible explanation.

---

[25] *See* Docs. 335, 336, 337, and 338.
[26] *See* Doc. 178-1 at 2.
[27] *See* Doc. 178-1 at 2.
[28] *See* Docs. 178 to 184.

7

Absolutely no limitations were placed on Blixseth or his counsel or his accountants in gathering and presenting everything necessary to provide the required accounting. The record remains, that materials and evidence absolutely necessary to the accounting were not provided, that Blixseth had the ownership interests, the capacity, and the control necessary to make the evidence available, that he did not do so and that he has no one to blame for his own deliberate shortcomings. Notwithstanding the serious failure to properly account as set out in Doc. 399, Blixseth still has done absolutely nothing to meet or address the ongoing and obvious deficiencies in the accountings.

It has been and continues to be Blixseth's unequivocally stated and maintained position that he will do nothing more to render a proper accounting. The record before the Court is replete with such declarations. Examples are:

1.        According to Mr. Ratte, as the custodian of financial records of the various companies that were owned or controlled by Mr. Blixseth when he was comptroller of those companies, all of the documents regarding the Tamarindo proceeds transferred to and expended by Kawish, WAW, DR, BGW, BSM, Cody Ranch, Friday Records, Little Bear, NCRS and Overlook (collectively the "Blixseth Related Companies) have been provided to the Court. Ratte Decl. ¶ 89. Mr. Ratte has further warranted that no documents responsive to the Court's January 9, 2015 order are being withheld from the Blixseth Related Companies. *Id.*

(Defendant Timothy L. Blixseth's Statement of Position of Compliance with Court's Order (Docs. 112 & 125) at 4 (Feb. 6, 2015)(Doc. 129).)

> 2.    I, Phillip DeFelice, as an officer of this Court, hereby certify to the following: . . . I personally certify that, as of February 6, 2015, that I in good faith have assisted my client and have complied with the production requirements of the Court's Order of January 9, 2015, to the very best of my knowledge and ability, and I am not aware of any documents or materials within the scope of the production requirements of the Court's Order of January 9, 2015, that have either been withheld or have not been produced.
>
> I am further informed and believe that no documents or material within the scope of the production requirements of the Court's January 9, 2015 Order that are within Mr. Blixseth's possession, custody or control have been withheld by Mr. Blixseth."

(Certification of Phillip DeFelice Pursuant to the January 23, 2015 Order (Doc. 125) at 2 (Feb. 6, 2015)(Doc. 135).)

> 3.    I, Michael J. Ferrigno, as an officer of this Court, hereby certify to the following:
>
>     . . . .
>
>     To the very best of my knowledge and ability, I am not aware of any additional documents or materials within the scope of the production requirements of the Court's Order of January 9, 2015, that have either been withheld or have not been produced, including the documents produced concurrently with this Certification.

(Certification of Michael J. Ferrigno Pursuant to the January 23, 2015 Order (Doc. 125) at 2 (Feb. 7, 2015)(Doc. 136).)

4.     [T]he updated and revised accounting [June 4, 2015] represents all that Mr. Blixseth can do to comply with the Orders of this Court and he has, to the best of his ability, complied with the various orders of this court.

(Defendant's Petition for the Immediate Release of Timothy L. Blixseth from Custody at 9 ( June 4, 2015) (Doc. 177).)

5.     After reviewing the accounting and all the backup documents contained in the excerpts of record, I hereby swear under penalty of perjury to the best of my personal knowledge that the accounting attached hereto as <u>Exhibit 1</u> accounts in full for the sale of the Tamarindo Hotel and Resort as ordered by this Court.

All the documents that I know to be responsive that I have had in my possession, custody and control, regarding the sale and use of the proceeds from the sale of the Tamarindo Hotel and Resort have been provided and cited to.

(Defendant Timothy L. Blixseth's Declaration in Support of his Petition for Release from Incarceration, at 3, ¶¶ 6-7 (June 4, 2015)(Doc. 178).

6.     The Defendants' position is that Mr. Blixseth has complied with the Court's orders to account for the sale of the Tamarindo Hotel and Resort. Mr. Blixseth has provided all the documents that he knows to be responsive that he had in his possession, custody and control, regarding the sale and use of the proceeds from the sale of Tamarindo Hotel. Doc. 178 at ¶ 7.

(Defendants' Supplemental Statement of Position Pursuant to Court's June 22, 2015 Order [Doc. 191] at 2 (June 26, 2015)(Doc. 193).)

7.     Here, a team of CPA's prepared an accounting that complies in every single respect with the District Court's April 20, 2015 Order, and Mr. Keller, Blixseth's accounting expert, testified that there was nothing more

that could be done to comply with the District Court's accounting requirement, and the accounting represents the most that either Blixseth or others on his behalf could prepare. If this accounting is insufficient, there is absolutely nothing more that Mr. Blixseth or any of those acting on his behalf can do. The District Court made no findings to the contrary. Eight months in solitary confinement no longer bears any reasonable relationship to the court's "accounting" requirement.

(Petitioner's Emergency Petition for Writ of Mandamus and Motion for an Immediate Stay of October 19, 2015 Incarceration Order Pending a Ruling or[sic] the Emergency Petition at 31, *In re Timothy L. Blixseth*, No. 15-73820 (9th Cir. December 21, 2015)(Doc. 396-1).)

8.     When the determination is heard by this Court (if the Court believes a hearing is necessary), Mr. Blixseth's position will remain the same -- that he has produced all information to trace the funds from the sale of the Tamarindo Hotel and Resort. He can do nothing further from his jail cell. If the Court were to call Mr. Blixseth to the stand, given the direction of these proceedings, Mr. Blixseth would likely invoke his 5th Amendment right to not incriminate himself.

(Defendants' Position Regarding Court's Jurisdiction at 7 (Jan. 21, 2016)(Doc. 413).)

9.     THE COURT: . . . we are going to need to be prepared through whatever discovery, if any, is necessary, and setting hearings as may be necessary to take up and to resolve these three questions: No. 1, as noted in the order, whether Mr. Blixseth lacks the ability to comply with prior orders. And I understand, Mr. Brain, that it has been made, at least to this Court, eminently clear the Mr. Blixseth's claim to this Court is that he doesn't have any further capacity to comply with

prior orders of the Court beyond what he has done.

    MR. BRAIN:  That's correct, Your Honor.

(Transcript of Status Conference at 12:19-25, 13:1-3 (Jan. 22, 2016)(Doc. 421).

10.        Moreover, what more does the District Court think that Blixseth can do from his jail cell? Logically, there is nothing more he can do, whether relevant or not, and thus is more pretext for continuing his incarceration.

(Appellant's Reply Brief at 26, *Timothy L. Blixseth v. Brian Glasser*, No. 16-35034 (9th Cir. February 5, 2016).)

    There can be no doubt at this point about Blixseth's steadfast assertion that "he has done all he can do" and that he will not submit anything more in support of his position.  Consequently, the Court is prepared to accept, and does accept, that nothing further by way of evidence in compliance with this Court's Orders of January 9, 2015, April 20, 2015, and Doc. 399 will be forthcoming from Blixseth. The state of the record is accepted by the Court where it is and as it is.  Further hearings or proceedings are neither necessary nor appropriate to resolve the Circuit's January 11, 2016, questions.

    The record today, is of course, the same record as was before the court at the close of the October 19, 2015, hearing.  None of the deficiencies or missing or unsupplied or lacking information has been provided.  It also remains that the sale

of Tamarindo and the dissipation of the sale proceeds were totally controlled by Blixseth, that he and he alone could have produced documentation and evidence required for the accounting and could still do so. Even so, the deficiencies and failures to comply with the Court's orders continue to be present and unresolved.

Blixseth has done nothing to challenge any of the deficiencies outlined in Doc. 399. Moreover, further scrutiny of the existing record reveals the presence of even more deficiencies and failures to provide an accurate or complete accounting. The following transactions involving Tamarindo sale proceeds totaling $2,656,664.06 remain unsatisfactorily accounted for and are of particular concern to the Court.

1. On May 3, 2011, Kawish, LLC, ("Kawish")(a company owned by Blixseth)[29] transferred $14,000 to JTB, LLC. No designated purpose for the transfer is shown.[30] JTB, LLC is not identified in the record as to ownership or activity. The transfer is not supported by documentation showing the reason JTB, LLC was said to be entitled to any amount of Tamarindo sale proceeds. Absent reliable documentation informing the Court why JTB, LLC was entitled to this specific amount of Tamarindo sale proceeds, the requirements of paragraph (1)(e)

---

[29] *See* Doc. 177 at 7.
[30] Doc. 179-8 at 3.

13

of the January 9, 2015, Order have not been met. The accounting remains incomplete.

2. On June 30, 2011, Kawish transferred $264,664.06 to Waterstone Bank, SSB for a purpose designated as "Unknown."[31] No documentation explaining why Waterstone Bank, SSB, was entitled to receive this specific amount of Tamarindo sale proceeds was provided. Although the comptroller for Kawish offered the explanation that this transaction was for past due interest and principal reduction, he was unable to locate or provide backup documentation confirming the claim.[32] Absent reliable supporting documentation substantiating the transfer to Waterstone Bank, SSB, the requirements of paragraph (1)(e) of the January 9, 2015, Order are not met. This component of the accounting also remains incomplete.

3. On October 25, 2011, November 7, 2011, November 18, 2011, December 29, 2011, and December 30, 2011, the sums of $275,000, $185,000, $188,000, $460,000, and $40,000[33] were transferred to Western Pacific Timber for the purpose, in each instance, of what were described as "Loans." None of the transfers were supported by any evidence of loan documentation or demonstrating

---

[31] Doc. 179-8 at 5.
[32] *See* Doc. 370-1 at 4.
[33] Doc. 179-8 at 9, 10, and 12.

why any transfer was made. Nothing has been provided supporting a finding of any legitimate business reasons for the claimed loans, why the payments were made, or as to who received the over $1,000,000 paid out from the Tamarindo proceeds. In short, the entire $1,148,000 is gone without explanation.

4. On June 25, 2012, Desert Ranch transferred $1,178,000 of the Tamarindo sale proceeds to "Timothy / Jessica Blixseth"[34] for a purpose designated as "Unknown." This transfer is not supported by any documentation supporting the conclusion that Timothy and Jessica Blixseth were entitled to receive this or any other part of Tamarindo sale proceeds. Although there was some evidence the $1,178,000 was claimed to be in repayment of funds that Blixseth had advanced to Desert Ranch,[35] absent reliable evidence and supporting documentation showing that Blixseth had advanced funds to Desert Ranch to cover operational expenses or for any other purpose, this intrafamily transfer of over $1,000,000, likewise, falls far short of meeting the requirements of paragraph (1)(e) of the January 9, 2015, Order or otherwise demonstrating that such intrafamily transfers were legitimate.

---

[34] Doc. 178-7 at 5, Check No. 1329.
[35] See Doc. 103, Hrg. Transcr. 80-81 (Dec. 18, 2014); Doc. 337-1, Transcr. Depo. Patrick Ratte 94-96 (Sep. 21, 2015).

5. On June 25, 2012, Desert Ranch transferred $52,000 to JTB, LLC for a purpose described as "Loan Payable."[36] As noted above, JTB, LLC is not identified to either ownership or activity. Moreover, this transfer is not supported by documentation showing why JTB, LLC was entitled to any specific amount of Tamarindo sale proceeds. Absent reliable documentation establishing the existence of a loan subject to repayment between Desert Ranch and JTB, LLC and which Blixseth was obliged to pay, the requirements of paragraph (1)(e) of the January 9, 2015, Order are not met, particularly in light of the factual reality that Blixseth owned and controlled Desert Ranch.[37]

Blixseth's complaint that he has done all he can and that he can do no more rings hollow and is unjustified. He plainly had the capacity and the ability to follow the requirements of the Court's orders, to comply with those orders, and to account as required. His failure or refusal to do so is a product of his own actions and nonactions from which he cannot be extracted by evidence in the record.

No conclusion can be drawn except that Blixseth "'carries the keys of his prison in his own pocket.'"[38] He has not accounted for the proceeds of the sale of

---

[36] Doc. 178-7 at 5.

[37] *See* Doc. 177 at 7.

[38] *Int'l Union v. Bagwell*, 512 U.S. 821, 828 (1994) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911) (quoting *In re Nevitt*, 117 F. 488, 451 (8th Cir. 1902))).

Tamarindo and gives no indication of any intent to do so. He continues to have the capacity and ability to do what is necessary to purge himself of the ongoing contempt and could, if he chose to do so, comply with the Court's prior orders. Blixseth's contention that he can do no more to comply is unworthy of acceptance or belief, particularly given that he has never submitted himself to examination on the subject.

The issues posed in the Court's January 13, 2016, Order, nevertheless, remain as yet unaddressed and unresolved:

> 1. Whether Blixseth lacks the ability to comply with the prior orders of this Court, including the orders dated February 3, 2014, January 9, 2015, January 23, 2015, and April 20, 2015;
>
> 2. For this Court to make an individualized decision as to whether Blixseth's continued confinement would have a coercive effect; and
>
> 3. For this Court to determine whether Blixseth is able to comply with the prior orders of this Court, including the orders of February 3, 2014, January 9, 2015, January 23, 2015, and April 20, 2015.[39]

Questions 1 and 3 are interrelated and in substance raise the question of whether Blixseth lacks the ability to comply with the prior orders of this Court or whether he is able to comply with such prior orders.

---

[39] Doc. 407 at 2-3 (footnotes omitted).

Notwithstanding over twenty-two thousand pages of accounting entries, statements, spread sheets, data compilations, and summaries that were submitted by Blixseth in no less than three separate what were claimed to be accountings, the materials remain critically lacking in content essential to compliance with the Court's orders of January 9, 2015, and April 20, 2015, and even more deficient in addressing and satisfying Blixseth's obligation to account for the disposition of the proceeds received from the sale of Tamarindo.

This Court's specific answers to the issues posed in the Circuit's January 11, 2016, Order[40] are:

> 1. Whether Blixseth lacks the ability to comply with the prior orders of this Court, including the orders dated February 3, 2014, January 9, 2015, January 23, 2015, and April 20, 2015;[41]

Blixseth continues to have the ability, if he chooses to do so, "to comply with the prior orders of this Court."

> 2. For this Court to make an individualized decision as to whether Blixseth's continued confinement would have a coercive effect;[42]

---

[40] Doc. 405.
[41] Doc. 407 at 2 (footnotes omitted).
[42] Doc. 407 at 2 (footnotes omitted).

The confinement of Blixseth remains civil in nature and continues to have the intended coercive effect of ensuring Blixseth's compliance with the Court's orders.

> 3.    For this Court to determine whether Blixseth is able to comply with the prior orders of this Court, including the orders of February 3, 2014, January 9, 2015, January 23, 2015, and April 20, 2015.[43]

Blixseth, as stated, remains fully able "to comply with the prior orders of this Court."

## CONCLUSION

Blixseth has not purged himself of his ongoing contempt of this Court. He has not done what is necessary to purge himself of the contempt. He can do so. The Court is obliged to conclude, and does conclude, that the coercive effect of the Court's orders to obtain compliance with the accounting requirements remains viable and nonpunitive. Blixseth is not entitled to release.

ORDERED:

Blixseth remains in civil contempt of this Court. He will continue to be

---

[43] Doc. 407 at 2-3 (footnotes omitted).

held in the custody of the United States Marshals pending further order of this

Court.[44]

DATED this ___19th___ day of February, 2016.


SAM E. HADDON
United States District Judge

---

[44] The issue remains – unresolved by this Court – as to whether the entirety of the $13,820,139.84 received by Blixseth from the sale of Tamarindo, contrary to the specific prohibition and order against sale imposed by the Bankruptcy Court, was in law, subject to a constructive trust in favor of the Yellowstone Club Liquidating Trust, which if recognized and applied would have prohibited Blixseth from further expenditure or dissipation of the sale proceeds. Address or resolution of that question will have to await institution and completion of other proceedings not yet undertaken. *See, e.g., Moore v. Crawford*, 130 U.S. 122 (1889); *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996); *In re Seaway Express Corp.*, 912 F.2d 1125 (9th Cir. 1990).